**SOUND OF MARKET STREET, INC.**

v.

**CONTINENTAL BANK INTERNATIONAL.**

**Civ. A. No. 84–3922.**

United States District Court, E.D. Pennsylvania.

Dec. 11, 1985.

Richard M. Meltzer, Philadelphia, Pa., for plaintiff.

Peter F. Marvin, Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff alleges that the defendant negligently failed to advise it in a timely manner that a letter of credit had been issued in its behalf, thereby causing plaintiff to lose the benefit of the bargain the letter of credit was meant to facilitate. Defendant has filed a motion for summary judgment claiming that it did not have a legal obligation to advise plaintiff of the letter of credit in a timely fashion. For the reasons that follow defendant's motion will be denied.

In May, 1982, plaintiff purchased blank audio cassette tapes from Dalco of Cyprus. Plaintiff then obtained permission from Dalco to return approximately 165,000 tapes for a refund of $125,500, which would be paid through a letter of credit. A letter of credit was issued by the Bank of Cyprus at the request of Dalco with plaintiff as the beneficiary. On August 6, 1982, the defendant received a telex from the Bank of Cyprus instructing it to prepare the letter of credit and to notify plaintiff that the credit had been issued. One of the credit's terms required shipment of the tapes on or before August 31, 1982. Although the defendant had reviewed and prepared the letter of credit by August 9, 1982, it did not send it to plaintiff until August 18, 1982, when it was sent by regular U.S. mail. Plaintiff did not receive the letter of credit until August 25, 1982, when it was too late for plaintiff to comply with the August 31 shipping date. As a result plaintiff was unable to return the tapes, suffering a loss, the extent of which has not yet been determined.

Article V of the Uniform Commercial Code defines an advising bank as a "bank which gives notification of the issuance of a credit by another bank." 13 Pa.C.S.A. § 5103(a) (1984). Defendant, in this case, was clearly serving as an advising bank. The explicit obligations assumed by an advising bank under the U.C.C. are very limited. Unless otherwise specified, an advising bank does not assume any obligation to honor drafts drawn or demands for payment made under the credit. 13 Pa.C.S.A. § 5107(a). An advising bank, however, does assume an obligation for the accuracy of the information it transmits to the beneficiary of the credit. *Id.;* H. Harfield, *Letters of Credit* 10–11 (1981).

Defendant argues that since the information provided to plaintiff about the credit was accurate and since the U.C.C. does not explicitly impose any other obligations on an advising bank, its untimely notification did not violate any legal obligation defendant had toward the plaintiff.

Article V of the U.C.C., however, "deals with some but not all of the rules and concepts of letters of credit as such rules or concepts ... may hereafter develop." 13 Pa.C.S.A. § 5102(c). Simply because obligations are not explicitly imposed on an advising bank by the Code does not mean that obligations which promote the underlying purposes and policies of the Code may not be imposed when fact patterns unforeseen by the Code's drafters are brought before the court. *See id.* at comment 2.

Letters of credit help facilitate transactions between merchants located in different countries who want to avoid legal entanglements with one another as much as possible even if their deal goes sour. A seller who is also the beneficiary of a letter of credit is guaranteed payment by the bank that issued the credit so long as the seller complies with the credit's terms. If a foreign buyer reneges on the deal or becomes insolvent while the goods are in

transit, the seller is still assured of payment without having to sue the buyer in a foreign jurisdiction. Similarly, a buyer need not advance funds to a foreign seller and trust that the goods for which it has already paid will be shipped in a timely and appropriate manner. If the foreign seller does not comply with the terms specified in the letter of credit, the buyer is assured that the bank it hired to issue the credit will not pay the seller.

Accuracy in letter of credit transactions is, therefore, of utmost importance. A letter of credit is a contract between the issuing bank and the beneficiary of the letter of credit that is separate and distinct from the contract between the buyer and the seller that the letter of credit is meant to facilitate. The beneficiary gives the bank the documents called for by the letter and gets paid in return. " '[T]he essential requirements of a letter of credit [, therefore,] must be strictly complied with by the party entitled to draw against the letter of credit, which means that the papers, documents and shipping descriptions must be as stated in the letter.' " *Marino Industries v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 114 (2nd Cir.1982) (citations omitted). Slight deviations between the documents presented and the documents called for in the letter have been held to justify a bank's refusal to pay the beneficiary. 686 F.2d at 114–15.

A beneficiary/seller, therefore, cannot prudently rely on what a buyer states will be the terms of a letter of credit. As regards the beneficiary, a letter of credit is not established until he receives the letter or an authorized written advice of its issuance. 13 Pa.C.S.A. § 5106(a)(2). If the beneficiary transports the goods before receiving the letter of credit, and its documents do not conform to the letter, it will not collect on the letter. In order to be paid, it will have to sue the buyer of the goods, something the letter of credit device was meant to avoid.

According to the defendant, an advising bank's only obligation is to be accurate when it notifies the beneficiary that a letter of credit has been issued in its behalf. According to this theory, if an advising bank completely fails to notify the beneficiary that the letter has been issued, it will not be liable. Similarly, if the advising bank holds onto a letter of credit until it expires, it again will not be liable. In neither instance has it transmitted inaccurate information to the beneficiary.

Defendant's position is obviously untenable. A beneficiary can suffer the same types of harm regardless of whether he gets inaccurate information about the letter of credit, untimely information or no information at all. In any of these hypothetical cases the deal can fall through and the seller must either look to a foreign buyer or to a negligent advising bank for the benefit of its bargain. If advising banks are liable for inaccurate statements regarding letters of credit, they should be liable for untimely statements as well. *Cf. General Cable Ceat, S.A. v. Futura Trading, Inc., et al.*, No. 82 Civ. 1087 (RLC), slip op. (S.D.N.Y. January 17, 1983) (defendant serving as both advising and paying bank liable for negligent mishandling of documents submitted by letter of credit beneficiary).

An appropriate order follows.

## ORDER

AND NOW, this 11th day of December, 1985, it is hereby ORDERED that defendant's motion for summary judgment is DENIED.